# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | |
| **JOHN LUCIANO** ) | | |
| ) | | |
| **Plaintiff** ) | | |
| ) | **Civil Action No.**_____ | |
| **v.** ) | | |
| ) | | |
| **TELTECH SYSTEMS, INC.** ) | | |
| ) | | |
| **Defendant** ) | | |
| _____) | | |

---

## <u>COMPLAINT</u>
### (with jury demand endorsed hereon)

---

NOW comes Plaintiff, **JOHN LUCIANO** and for his complaint against Defendant **TELTECH SYSTEMS, INC**., states and avers as follows:

## <u>NATURE OF THE ACTION</u>

1.      Teltech Systems, Inc., offers for sale in the Commonwealth of Massachusetts and other States the "SpoofCard Service", which provides its customers the capacity to change (or "spoof") the Caller ID that is displayed on a called party's telephone and disguise and change the callers voice. These calls can likewise be recorded by the caller without the knowledge or permission of the called party.  With Defendant's full knowledge and active promotion, advertising and encouragement the SpoofCard is regularly utilized within the Commonwealth to commit acts of domestic violence, falsely accuse others of crimes, fake kidnappings, interfere with personal relationships, avoid lawful commitments (including jury duty), make false police reports, make false emergency calls, obtain evidence for court cases in a fraudulent and illegal manner, and

otherwise defame, harass, annoy and invade the privacy of others.   This is a civil action for permanent injunctive relief, compensatory damages, exemplary damages (including treble damages and punitive damages), and attorneys' fees and costs of suit under the Massachusetts Consumer Protection Act, M.G.L.A. ch. 93A**,** § 1, *et seq.* and related common law causes of action arising from Defendant's willful and intentional violations of the criminal statutes and laws of the Commonwealth of Massachusetts and for the creation, marketing, promotion and sale of illegal services within the Commonwealth and directed at the citizens of the Commonwealth. As set forth herein Plaintiff has suffered direct injuries as a result of "spoofing", including but not limited to imprisonment, public ridicule, physical injury, attorneys fees and expenses, eviction, loss of income, severe and debilitating emotional distress and other like and serious harm.

## THE PARTIES

2.      At all relevant times, Plaintiff John Luciano (hereinafter "Plaintiff") was a resident of the Commonwealth of Massachusetts and resided at 41 South Walnut Street, no. 2L., Quincy, Massachusetts.

3.      At all relevant times, Defendant Teltech Systems, Inc. (hereinafter "Defendant") was and is a for-profit corporation with its principal place of business at 1433 Hooper Avenue, Suite 129, Toms River, New Jersey 08753.

## JURISDICTION AND VENUE

4.      This Court has also original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum of $ 75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Defendant under M.G.L.A. ch. 223A, § 3, as

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

Defendant has caused Plaintiff tortious injury by acts or omissions in the Commonwealth of Massachusetts.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred within the Commonwealth of Massachusetts.

## STATEMENT OF RELEVANT FACTS

7.      As of January 28, 2009, Plaintiff lived with his wife, Melissa, in a second-floor apartment no. 2L on 86 Granger Street, a multifamily dwelling with four rental units located in Quincy, Massachusetts.

8.      Siobhan Walsh ("Walsh") was a first-floor neighbor of Plaintiff's as of January 28, 2009, and lived directly below him in apartment unit 1L in 86 Granger Street in Quincy, Massachusetts.

9.      In the early morning hours of January 28, 2009, six calls were placed to Walsh's home phone from a certain Michael DiLorenzo's ("Mr. DiLorenzo") cell phone (617-306-0339) and from a trac-phone (617-671-8146) possessed by Mr. DiLorenzo and/or his wife, Mrs. Johnienne DiLorenzo ("Mrs. DiLorenzo").

10.     All six of these calls placed to Walsh's phone were made to look like they were coming from either Plaintiff's home number (617-773-8284) or Plaintiff's cell phone (617-347-3463).

11.     In placing the calls to Walsh, Mr. DiLorenzo and Mrs. DiLorenzo used a service through SpoofCard.com to mimic Plaintiff's phone number.

12.     When Walsh was awoken by the first phone call from Mr. DiLorenzo and Mrs. DiLorenzo at about 1:30 A.M. on January 28, 2009, she noticed that the caller ID displayed that the phone number was blocked.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

13.     When the phone rang a second time, Walsh saw that the caller ID indicated that the call was coming from "LUCIANO, Melissa, Ph# 617-328-5316."

14.     Walsh answered her phone and heard a male voice, which she assumed was Plaintiff's voice.  Walsh asked what the caller wanted and the caller said, "Meet me in the laundry room.  I can't wait to f**k you up the ass so hard!  I know what you like!"

15.     Walsh hung up her phone, but the phone calls continued throughout the night until Walsh finally unplugged her phone at around 4:00 A.M.

16.     Later during the morning of January 28, 2009, Walsh checked her voice messages and found three new messages spoken in a voice that she identified as Plaintiff's voice.  The messages all contained obscene content, such as, "Why didn't you meet me?  I want to f**k you in the ass!"

17.     That same day, on January 28, 2009, Walsh contacted the Quincy Massachusetts Police Department and told them about the calls.  The police commenced an investigation of Plaintiff.

18.     During the evening of January 28, 2009, Quincy police officers busted down  Plaintiff's apartment door and took him into custody at his residence.  He was arrested at gunpoint and forced to the ground by numerous police officers – while in boxer shorts, shoeless, and in front of his seventeen-year-old daughter.  Plaintiff was injured during the arrest, as he had just undergone surgery about a week before for blood clots and a pulmonary embolism, and had staples in his legs and was in recovery.  That evening he was transported to the hospital for further treatment caused by the arrest.

19.     Police held Plaintiff overnight at the Quincy Police Station.

20.     Plaintiff was charged in an application for criminal complaint with threatening to commit a crime and criminal harassment.

4

21.     On January 29, 2009, Plaintiff was transported from the Quincy Police Station to the Quincy District Court for his arraignment on a criminal complaint charging him with threatening to commit a crime and criminal harassment, docket number 0956 CR 0726, and he was held on $1500.00 cash bail.  After his arraignment, he was transported in custody to the Dedham House of Correction, where he was held until February 2, 2009, after posting bail.

22.     At approximately 11:21 A.M. on February 2, 2009, Walsh received a voicemail on her home phone from another blocked number.  The voicemail contained a threat, telling Walsh there would be retaliation against her if she did not drop the criminal charges.

23.     At approximately 11:24 A.M. on February 2, 2009, Walsh received another threatening voicemail.

24.     At 12:12 P.M. on February 2, 2009, Walsh received another voicemail from a blocked number.  This time, the threats were similar to the first two messages, but spoken in a female voice.

25.     Convinced that Plaintiff was behind these phone calls, Walsh applied for a Stay Away Order from Norfolk County Superior Court in Dedham, Massachusetts, which was granted on February 2, 2009.

26.     After Walsh reported to the Quincy Police Department the harassing phone calls of February 2, 2009, Mr. Plaintiff was arrested and taken to the Quincy Police Station.

27.     The calls made to Walsh's phone on February 2, 2009, led to felony witness intimidation charges being filed against Plaintiff in another application for a criminal complaint in the Quincy District Court, resulting in another arraignment on a new criminal complaint on this charge, docket number 0956 CR 1482.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

28.     On or after March 3, 2009, Quincy Police Detective Ralph Willard, having discovered that Mr. and Mrs. DiLorenzo had called Walsh, contacted Mr. DiLorenzo and Mrs. DiLorenzo to speak about the phone calls Walsh received from them.  Mrs. DiLorenzo lied to police, stating that someone had left Walsh's phone number on the pager service and voicemail of her phone in a muffled voice. Mrs. DiLorenzo likewise falsely informed the police that she and her husband had received harassing phone calls from the 617-671-8146 number, stating that she believed these calls were from Plaintiff.

29.     After being confronted with evidence of their wrongdoing, on December 4, 2009, Mr. DiLorenzo and Mrs. DiLorenzo admitted to Quincy Police that they mimicked Plaintiff's phone number and called Walsh as set forth above. Mr. DiLorenzo also admitted that he and his wife were in possession of the trac-phone using the 617-671-8146 number.   Furthermore, Mr. DiLorenzo admitted to police that he and Mrs. DiLorenzo used SpoofCard to call Walsh on January 28, 2009, while "spoofing" Plaintiff's number[1]. Mr. DiLorenzo and Mrs. DiLorenzo likewise told police they were responsible for the calls Walsh received on January 28, 2009, and February 2, 2009, and that Plaintiff did not make these calls to Walsh.

30.     As a result of the aforementioned admissions, criminal complaints were filed against Mr. DiLorenzo and Mrs. DiLorenzo for one count each of criminal harassment in violation of G.L. c. 265, § 43A and threats to commit a crime in violation of G.L. c. 275, § 2, for the calls made to Walsh on January 28, 2009, as well as one count each of intimidation of a witness in violation of G.L. c. 268, § 13B, for the calls made to Walsh on February 2, 2009, and one count each of

---

[1] Plaintiff became aware that the DiLorenzo's had possibly used the SpoofCard "service" on or about September 25, 2009 as a result of the investigation of the matter by a private detective employed by his criminal defense attorney.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

misleading a police officer, in violation of G.L. c. 268, § 13B, for leading police to believe that Plaintiff was the person responsible for the calls made by Mr. DiLorenzo and Mrs. DiLorenzo.

31.     On December 16, 2009, the Norfolk County District Attorney filed two written motions with the Quincy District Court seeking dismissal of both criminal complaints against Plaintiff, and each motion was allowed.

32.     As a direct and proximate result of the aforementioned incidents, Plaintiff has suffered incarceration, loss of his residence, public humiliation, embarrassment, physical harm, sleeplessness, severe and debilitating emotional distress, difficulties in his personal relationships and loss of income. Plaintiff has likewise been forced to incur legal fees and expenses in connection with his above cited criminal defense.

## DEFENDANT'S CULPABILITY

33.     For several years, Defendant has offered the SpoofCard service (hereinafter "SpoofCard") for a fee to consumers with the Commonwealth of Massachusetts. According to Defendant, SpoofCard "operates like a regular long distance calling card service, but provides each customer the capability to change (or "spoof") the Caller ID that is displayed on a called party's telephone" in order to deceive, harass and annoy the called party. SpoofCard likewise permits the caller to change and disguise his/her voice as well in order to deceive, harass and annoy the called party and likewise tape the call without the knowledge or consent of the called party.

34.     For several years prior to the events set forth above, Defendant has had actual knowledge that the SpoofCard product is regularly utilized for illegal purposes. By way of example, Defendant had actual knowledge of the following:

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

a. Queens, New York District Attorney Richard Brown indicated that "[from a law enforcement perspective, (SpoofCards) are anything but a spoof." As Mr. Brown explained, these cards are "virtually untraceable" and have been used by "identity thieves and hackers to pose as government and financial entities as a means to unscrupulously obtain personal information from unsuspecting consumers and also by defendants in domestic violence cases to harass their victims".

b. Criminal defense attorneys and prosecutors from across the country indicated that alleged victims in domestic violence cases have utilized the SpoofCard to frame the defendant and obtain the defendant's arrest for domestic violence or for violation of protective orders.

c. There have been repeated, well publicized reports that the card has been used for reporting false instances of criminal conduct, causing law enforcement personnel (including SWAT teams) to suddenly and unexpectedly appear at the home of the victim.

d. Defendant has been subpoenaed to provide documents in cases across the country evidencing the use of SpoofCard in domestic violence, telephone harassment, stalking, theft and fraud cases, including cases involving facts very similar to the ones set forth above.

e. The illegal uses of the SpoofCard have been referenced in several publications and news reports.

f. Governmental agencies, including but not limited to the Federal Communications Commission, have indicated that the SpoofCard has been utilized to facilitate a

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

wide variety of "malicious schemes," including identity theft, "swatting," domestic violence and telephone harassment.

35.     In order to encourage use of the Spoof Card for illegal purposes, Defendant has intentionally and willfully published "testimonials" where alleged customers have claimed, amongst other things, to have utilized the SpoofCard to harass their former spouses,[2] commit acts of domestic violence, secretly tape record conversations, falsely accuse others of crimes, fake kidnappings, interfere with personal relationships, avoid lawful commitments (including jury duty), make false police reports, make false emergency calls, obtain evidence for court cases in a fraudulent and illegal manner, and otherwise defame, harass, annoy and invade the privacy of others.   Defendant has likewise actively advertised on the internet and otherwise the use of the SpoofCard to commit the aforementioned offenses.   True copies of certain of these advertisements/"testimonials" are attached herewith as Exhibit "A".

36.     Given these advertisements and knowledge of SpoofCard's prior usage, it is clear that the use of SpoofCard in the manner set forth above in connection with Plaintiff's criminal case was reasonably foreseeable by Defendant. It is likewise clear that the harm suffered by Plaintiff was reasonably foreseeable.

## FIRST CAUSE OF ACTION
### (Violations of G.L. c. 93A)

37.     Plaintiff incorporates the averments set forth in paragraphs one (1) through thirty-six (36) of the Complaint as if fully rewritten hereunder.

---

[2] To illustrate this point, consider the following testimonial:   "WIFE WAS CHEATING BITCH AFTER 10 YEARS. SHE WAS HAVING AFFAIR WITH TRASHY EX. . . .SO A MONTH LATER AFTER SHE WENT BACK TO HER EX I CALLED HIS PHONE FROM HER CELL WHILE HE WAS AT WORK AND TOLD HIM THAT I WAS SCREWING HER AGAIN RIGHT THEN AND—GOT TO GO SHE IS COMING OUT THE BATHROOM."

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

38.     Defendant is a "person" engaged in trade and commerce within the meaning of G.L. c. 93A and an "enterprise" as defined by G.L. c. 271A, §1.

39.     As set forth above, Defendant has purposely, willfully and intentionally aided and abetted the  violations of Massachusetts criminal statutes, including but not limited to: (i) G.L. c. 269, § 14A (prohibiting annoying telephone calls); (ii) G.L. c. 265, § 43A (prohibiting criminal harassment); (iii) G.L. c. 272, § 99 (eavesdropping, wiretapping and other interception of communications); (iv) G. L., c. 266, § 37E (prohibiting identity theft) and (v) G.L., c. 265, § 43 (prohibiting stalking), in the instant case and in similar instances throughout the Commonwealth of Massachusetts.

40.     Defendant's aforesaid actions constitute "criminal enterprise activities" as defined by G.L. c.271A, §1.

41.     Defendant has engaged in at least three (3) instances of such criminal enterprise activity that have the same or similar pattern, intent, results, types of victims and methods within five (5) years of the date of Defendant's involvement with Plaintiff's criminal case.

42.     Defendant has knowingly, willfully, intentionally and maliciously engaged in unfair and deceptive practices and violated G.L. c. 93A § 2 in the following respects, among others:

a.     By aiding and abetting and directly profiting from the criminal activity of the DiLorenzos and others as outlined above in connection with the advertising, promotion and sale of the SpoofCard in the Commonwealth of Massachusetts.  These actions constitute unfair and deceptive acts and practices in violation of G.L. c. 93A, § 2.

b.     By engaging in violations of state law as outlined above in connection with the advertising, promotion and sale of the SpoofCard in the Commonwealth of Massachusetts.  These actions constitute unfair and deceptive acts and practices in violation of G.L. c. 93A, § 2.

10

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

c.      By engaging in immoral, unethical, oppressive, or unscrupulous behavior and business practices as outlined above in connection with the advertising, promotion and sale of the SpoofCard in the Commonwealth of Massachusetts.  These actions constitute unfair and deceptive acts and practices in violation of G.L. c. 93A, § 2.

43.     Plaintiff has been directly harmed by Defendant's aforementioned violations of G.L. c. 93A as set forth above.

44.     Plaintiff, by and through his attorneys, have send to Defendant by overnight mail and personal delivery a written demand for relief pursuant to G.L. c. 93A, § 9, identifying the claimants and reasonably describing the unfair acts and practices relief upon and injuries suffered by Plaintiff.  A copy of this demand letter is attached herewith as Exhibit "B".

45.     Plaintiff received a letter from the attorney of Defendant in response to the aforesaid demand.  By way of this reply letter, Defendant failed to make a reasonable offer of relief to Plaintiff.  A copy of this reply letter is attached herewith as Exhibit "C".

46.     The Defendant's refusal to grant relief as requested by Plaintiff was in bad faith and with knowledge or reason to know that the acts of Defendant violated G.L. c. 93A, § 2.

## SECOND CAUSE OF ACTION
### (Negligence)

47.     Plaintiff incorporates the averments contained in paragraphs one (1) through forty-six (46) as if fully rewritten hereunder.

48.     Defendant owes a duty to Plaintiff and the citizens of Massachusetts to act in a reasonably prudent manner in connection with the selling, marketing, promoting, advertising, distributing and designing of SpoofCard.

49.     Defendant violated this duty and was negligent in selling, marketing, promoting, advertising, distributing and designing of SpoofCard in a manner that Defendant foresaw or

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

should have foreseen would cause the aforementioned violations of the laws of the

Commonwealth of Massachusetts and the harm to Plaintiff described above.

50.     As a direct and proximate result of this breach, Plaintiff has suffered the harm set forth

above.

## THIRD CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

51.     Plaintiff incorporates the averments in paragraph one (1) through fifty (50) as if fully

rewritten hereunder.

52.     As a direct and proximate result of Defendant's aforesaid actions, Plaintiff has suffered

extreme and debilitating emotional distress, upset, alarm, panic and fright.

53.     Defendant's aforementioned conduct was extreme and outrageous and beyond all

possible bounds of decency and was utterly intolerable in a civilized community.

54.     Defendant knew or should have known that Defendant's emotional distress would be the

likely result of Defendant's aforesaid conduct.

55.     The emotional distress sustained by Plaintiff was severe and of a nature that no

reasonable person could be expected to endure.

## FOURTH CAUSE OF ACTION
### (Negligent Infliction of Emotional Distress)

56.     Plaintiff incorporates the averments contained in paragraphs one (1) through fifty-five

(55) as if fully rewritten hereunder.

57.     As a direct and proximate result of Plaintiff's breach of duty as set forth above, Plaintiff

has suffered extreme and debilitating emotional distress, upset, alarm, panic and fright.

58.     Plaintiff's emotional distress was evidenced by physical harm manifested by objective

symptomology.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

59.     A reasonable person would have suffered emotional distress under the same circumstances as those encountered by Plaintiff as described herein.

**FIFTH CAUSE OF ACTION**
**(Invasion of Privacy)**

60.     Plaintiff incorporates the averments set forth in paragraphs one (1) through fifty-nine (59) of the Complaint as if fully rewritten hereunder.

61.     Defendant aforementioned actions unreasonably, substantially and seriously interfered with Plaintiff's right of privacy as set forth in G.L. c. 214 § 1B.

62.     As a direct and proximate result of said invasion of privacy, Plaintiff has suffered harm as set forth above.

    **WHEREFORE**, Plaintiff prays for the following relief:

1.  For this Court to enter judgment for Plaintiff and against Defendant;

2.  For this Court to award Plaintiff compensatory damages in the amount of Five Million Dollars ($5,000,000.00)

3.  For treble damages in accordance with G.L. c. 93A, § 9(3);

4.  For punitive damages in an amount to be set by this Court;

5.  For an award of attorney fees and the costs of this action;

6.  For a preliminary and permanent injunction enjoining Defendant from the marketing, promotion and sale of the SpoofCard service in the Commonwealth of Massachusetts;

7.  For disgorgement of all proceeds and/or profits generated by Defendant from the sale of the SpoofCard service in the Commonwealth of Massachusetts; and

8.  For such further and additional relief as Plaintiff may be entitled at law or in equity.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

JOHN LUCIANO, by his Attorney


/s/RICHARD B. REILING BBO 629203
RICHARD B. REILING
Attorneys at Law
Two Center Plaza, Suite 510
Boston, MA 02108
800-719-2680 Phone & Facsimile
Attorney for Plaintiff


## JURY DEMAND

Plaintiff demands trial by jury as to all issues herein.

Respectfully submitted:


/s/RICHARD B. REILING BBO 629203
RICHARD B. REILING #629203
Attorney at Law

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com